UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CONRAD ULZ, | ) | No. 05 B 01818 |
| | ) | |
| | ) | |
| Debtor ) | | Judge Goldgar |

### MEMORANDUM OPINION

This chapter 7 case is before the court for ruling on the objection of the debtor and two creditors to a claim. The claim is based on the assignment of a judgment entered against the debtor in an action in the district court. The objection asserts that the claim should be disallowed because the assignment is unenforceable under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.* (2006) (the "Contribution Act"). For the reasons that follow, the objection will be sustained.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B).

### 2. Facts

The relevant facts are taken from the parties' papers, the record in the district court action, the record in this bankruptcy case, the claims register for the

case, and a short stipulation filed in the case along with attached exhibits.[1] No facts are in dispute.

On May 6, 2003, New Freedom Mortgage Corp. ("New Freedom"), a residential mortgage lender, filed an action in the district court styled *New Freedom Mortgage Co. v. C & R Mortgage Corp., et al.*, No. 03 C 3027 (N.D. Ill.). (Dist. Ct. Dkt. No. 1). In its amended complaint (*see* Dist. Ct. Dkt. No. 4), New Freedom alleged that in early 2000 it had been the victim of a scheme to induce it to make a residential mortgage loan to one Sharone Heard. According to the complaint, New Freedom and C & R Mortgage Corp. ("C & R"), a mortgage broker, had a standing agreement under which C & R brokered loans for New Freedom. (*Id.* at 2). Conrad Ulz ("Conrad"), the debtor in this case, also brokered loans, either as an employee of C & R or as an independent contractor working for C & R. (*Id.* at 3). Both C & R and Conrad acted as brokers on the Heard loan and were two of the scheme's perpetrators.

Specifically, New Freedom alleged that Conrad and another defendant recruited Heard and convinced her to use her good credit to obtain a $440,000 loan from New Freedom. (*Id.* at 4). Ostensibly, Heard intended to buy a home for herself; in fact, the proceeds would go to another person to save his property from foreclosure. (*Id.* at 4-5). C & R and Conrad prepared the documents for Heard to apply for the New Freedom loan. (*Id.* at 5). In them, Heard represented that she

---

[1] The court can take judicial notice both of its own record in the bankruptcy case, *see Griffin v. United States*, 109 F.3d 1217, 1218 n.1 (7th Cir. 1997), and of the record in the related district court action, *see Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 215 n.2 (7th Cir. 1992).

would obtain no other loans for the purchase, that she would make a downpayment to New Freedom of at least $100,000, and that she intended to occupy the property as her principal residence. (*Id.* at 5-6). With the assistance of C & R and Conrad, Heard also submitted an appraisal report showing the value of the property as $550,000. (*Id.* at 6-7).

New Freedom alleged that in reliance on these representations and others, it approved and funded the loan. (*Id.* at 8). The transaction closed in October 2000. (*Id.* at 9). Portions of the proceeds were paid to C & R and to Conrad. (*Id.*). Immediately following the closing, New Freedom sold the loan to another lender, IMPAC, under a standing agreement between them. (*Id.* at 10).

The complaint went on to assert that the representations Heard made to New Freedom in the loan documents were false, and C & R and Conrad knew they were false. (*Id.* at 9). Heard never occupied the property and never intended to. (*Id.* at 9-10). Another loan from another lender was used to finance the purchase. (*Id.*). Heard invested no funds of her own in the property. (*Id.*). And the property was worth much less than $550,000. (*Id.*). The first payment to New Freedom was due in December 2000, but Heard never made any payments on the loan and never intended to make any, as C & R and Conrad were aware. (*Id.* at 10).

Finally, the complaint alleged that New Freedom became obligated under its agreement with IMPAC to repurchase the loan. (*Id.*). As a result of the fraudulent scheme, New Freedom alleged, it had suffered a loss consisting of the $440,000 loan

amount plus interest. (*Id.* at 11).[2]

New Freedom's amended complaint contained eight counts alleging various claims against various combinations of defendants, including claims for common law fraud, negligence, breach of contract, breach of fiduciary duty, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (2002), and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* Count V, a claim for negligent representation, was directed at C & R. (Dist. Ct. Dkt. No. 4 at 18-20). In Count V, New Freedom alleged that C & R was in the business of supplying information for the guidance of others and so had a duty "to refrain from negligently providing New Freedom with false information." (*Id.* at 19, ¶ 34). Conrad was a defendant only on the common law fraud claim in Count I, the Consumer Fraud Act claim in Count II, and the RICO claim in Count IX.

C & R appeared and proceeded to defend the action (*Id.*, Nos. 16, 31), as did several other defendants. Conrad, though, did not appear, and New Freedom moved for a default order. (*Id.*, No. 41). The district court granted New Freedom's motion and entered an order defaulting Conrad on October 1, 2003. (*Id.*, No. 43).

Litigation continued for several more months.[3] Then, in April 2004, New

---

[2] New Freedom later alleged in a second amended complaint that in July 2003 the property had been sold at foreclosure for $309,000, reducing New Freedom's damage claim to $307,937.48. (Dist. Ct. Dkt. No. 91 at 10-11).

[3] In January 2004, the district court entered an order granting in part and denying in part the motions of some defendants to dismiss certain counts of the amended complaint and granting leave to amend. *See New Freedom Mortgage Corp. v. C & Mortgage Corp.*, No. 03 C 3027, 2004 WL 783206 (N.D. Ill. Jan. 15,

-4-

Freedom reached a settlement with C &R and the other non-defaulted defendants. (*Id.*, No. 101). Under the settlement agreement, C & R would pay New Freedom $225,000 (Bankr. Ct. Dkt. No. 127, Ex. A at § 4(A)), and certain other defendants would pay a total of $60,000. (*Id.* at §§ 4(B), 4(C)). In return, New Freedom would file a motion for default judgment in the amount of $307,937.48 against Conrad and then assign the judgment to C &R. (*Id.* at § 5). From any recovery on the assigned judgment, C & R would pay New Freedom the first $15,000. (*Id.*). Upon execution of the settlement agreement, New Freedom would file a stipulation to dismiss and obtain an order dismissing the claims against the settling defendants. (*Id.* at § 7).

The settlement agreement was signed. On May 27, 2004, New Freedom filed the stipulation and moved to dismiss the claims against the settling defendants. (Dist. Ct. Dkt. Nos. 111, 112). That same day, New Freedom also moved for a default judgment against Conrad and the other defendants in default. (*Id.*, No. 108). On June 3, 2004, the district court granted both motions, entering a judgment against Conrad and two other defendants, jointly and severally, for $307,937.48. (*Id.*, Nos. 109, 110). The claims against the settling defendants were dismissed with prejudice. (*Id.*).

About a week later, on June 4, 2004, New Freedom duly assigned its judgment against Conrad to C & R (Bankr. Ct. Dkt. No. 91, Ex. B), and C & R began trying to collect the judgment (*see* Dist. Ct. Dkt. 113, 116). This prompted

---

2004). Following the ruling, New Freedom filed its second amended complaint. (*Id.*, No. 91). The second amended complaint did not change the nature of the claims against C & R or Ulz. (*Id.*).

-5-

Conrad to move to vacate the judgment. (*Id.*, No. 119). The district court denied his motion. (*Id.*, No. 121).

One week after Conrad's attempts to forestall collection of the judgment proved unsuccessful, he filed this chapter 7 bankruptcy case. (Bankr. Ct. Dkt. No. 1). C & R commenced an adversary proceeding objecting to Conrad's discharge (*see id.*, No. 11), and following a trial discharge was denied (*id.*, No. 18). In December 2006, the chapter 7 trustee filed an initial report of assets (*id.*, No. 54), and a notice was sent to creditors fixing March 13, 2007, as the bar date for filing proofs of claim (*id.*, No. 55).

Only three creditors filed claims in the bankruptcy: C & R, Mary Ann Ulz (the wife of Conrad) ("Mary Ann"), and Rebecca Ulz (the daughter of Conrad and Mary Ann) ("Rebecca"). C & R's claim is an unsecured claim for $307,937.48 based on the assigned judgment. (Bankr. Ct. Claims Reg., Claim No. 1-1). The claims of Mary Ann and Rebecca are unsecured and unliquidated. They are also opaque: neither proof of claim provides any basis for a claim. Each describes itself simply as "protective," to be "amended at a later date." (*Id.*, Claims Nos. 2-1, 3-1).

Shortly before the trustee filed his initial report of assets, he began efforts to have Conrad turn over certain property: cars, real estate, shares of stock, bank accounts, and so on. (*See* Bankr. Ct. Dkt. No. 28; *see also id.*, No. 64). The trustee's commencement of an adversary proceeding seeking turnover of the property from Conrad, Mary Ann, and Rebecca (*id.*, No. 90) caused the Ulzes to object to C & R's

claim (*id.*, No. 92).[4]

No party in interest has objected to the claims of Mary Ann and Rebecca, despite the claims' opacity. The objection of Conrad, Mary Ann, and Rebecca to C & R's claim is the only objection of record. That objection is fully briefed and ready for decision.

### 3. Discussion

The objection to C & R's claim will be sustained. The assignment C & R received of New Freedom's judgment is unenforceable under the Contribution Act. The claim of C & R will accordingly be disallowed. *See* 11 U.S.C. § 502(b)(1) (permitting disallowance of a claim that is "unenforceable against the debtor and property of the debtor under any agreement or applicable law").

### a. Standing

Before addressing the merits of the objection, it is necessary to consider C & R's challenge to the standing of Conrad, Mary Ann, and Rebecca to object at all. C & R contends that Mary Ann and Rebecca are not parties in interest with standing because they are not creditors, and even if they are, the trustee has not refused to object to the claim. Conrad lacks standing, C & R says, because a chapter 7 debtor cannot object to claims unless there is a reasonable chance of a surplus following

---

[4] The objection to C & R's claim was a reasonable response to the trustee's adversary proceeding. Because C & R is the only creditor who is not a member of Conrad's immediate family, the Ulzes may well believe that if their objection is sustained and C & R's claim is disallowed, the trustee will voluntarily dismiss his adversary proceeding and consent to the dismissal of the bankruptcy.

distribution, and Conrad has not shown there is.

Section 502 of the Code governs the allowance of claims and interests and permits any "party in interest" to object to claims. *See* 11 U.S.C. § 502(a). The Code does not define "party in interest." *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998). The Seventh Circuit, however, has said that a "party in interest" is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000); *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996). In keeping with the general standing rule in bankruptcy cases, the interest must be pecuniary. *See In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607-08 (7th Cir. 1998) (holding that to have standing, "a person must have a pecuniary interest in the outcome of the bankruptcy proceedings").

A creditor's interest is pecuniary, and so a creditor is a "party in interest" with standing to object to the claims of other creditors -- provided no trustee has been appointed or the trustee has been asked to object but has refused.[5] *Kowal v.*

---

[5] The proviso is a judicial limitation on the apparently clear language of section 502(a) broadly allowing any "party in interest" to object. The limitation stems from a belief that "the needs of orderly and expeditious administration" require the trustee to object to claims in the first instance and "do not permit the full and unfettered exercise" of the rights of creditors. *See* 4 Collier on Bankruptcy ¶ 502.02[2][d] at 502-14 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008). The Seventh Circuit has not yet decided whether this limitation is valid. *Cf. Adair*, 230 F.3d at 894 n.3 (noting that creditors are parties in interest under section 502(a) and then declaring without discussion that "if one creditor files a potentially fraudulent proof of claim, other creditors have standing to object to the proof of claim"). Its validity need not be considered here because the limitation does not apply. At a status hearing on January 9, 2009, the trustee announced that he would not pursue the objection of Mary Ann and Rebecca to C & R's claim.

*Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992); *In re Manshul Constr. Corp.*, 223 B.R. 428, 430-31 (Bankr. S.D.N.Y. 1998). A chapter 7 debtor, on the other hand, is usually not a "party in interest" with standing to object to claims. *In re Drost*, 228 B.R. 208, 209 (Bankr. N.D. Ind. 1998); *In re Olsen*, 123 B.R. 312, 313 (Bankr. N.D. Ill. 1991). The success of his objection cannot affect him because the debtor receives a distribution only after all creditors have been paid in full, and an estate will rarely have enough assets to do even that. *Stinnett v. Laplante (In re Stinnett)*, 465 F.3d 309, 315 (7th Cir. 2006). A debtor will have standing, though, if there is a reasonable possibility of a surplus once all claims are paid. *Id.*

In this case, it is unnecessary to decide the standing questions specific to the objecting parties because under the peculiar facts here *either* Mary Ann and Rebecca have standing to object to C & R's claim *or* Conrad does. The reason is that only three creditors have filed claims: Mary Ann, Rebecca, and C & R. Mary Ann and Rebecca may indeed be creditors, as they say they are.[9] If so, they have standing to object to C & R's claim because success on their objection would leave them the sole creditors of the estate; they alone would be entitled to the distribution of assets after payment of administrative expenses. If C & R is correct, however,

---

[9] It appears they are. Mary Ann and Rebecca assert they are creditors because they have an interest in property the trustee wrongly contends is property of Conrad's estate. *See generally Cohen v. Ulz (In re Ulz)*, 388 B.R. 865 (Bankr. N.D. Ill. 2008) (denying motion to dismiss trustee's complaint seeking turnover of property titled to Mary Ann and Rebecca). It could certainly be argued that such a claim is a not a "claim against the debtor," 11 U.S.C. § 101(5)(A), and the party asserting the claim is therefore not a "creditor," 11 U.S.C. § 101(10)(A). But Mary Ann and Rebecca have filed proofs of claim in Conrad's case and no party in interest has objected to them, so the claims are deemed allowed. *See* 11 U.S.C. § 502(a).

and Mary Ann and Rebecca are not creditors, Conrad has standing to object to C & R's claim because Conrad's success on his objection to the claim of the sole creditor would mean there were no creditors at all. The entire estate would end up in his hands after payment of administrative expenses – as clear a "surplus" as there could be.

Because one of the objecting camps must have standing to object to C &R's claim – either the creditors, Mary Ann and Rebecca, or the debtor, Conrad – the objection cannot be dismissed on standing grounds, as C & R urges. It is necessary to reach the merits.

### b. The Contribution Act

The objection to C & R's claim will be sustained. As the Ulzes argue, the Contribution Act applies here, and an assignment of the kind C & R received in settlement of the district court action is unenforceable under the Act.

Enacted in 1979, the Contribution Act creates "a comprehensive scheme for the allocation of responsibility for a plaintiff's damages among multiple alleged tortfeasors." *Board of Trustees of Community College Dist. No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 278, 803 N.E.2d 460, 471 (2003). The Act provides that when two or more people are subject to liability in tort to the same person for the same injury, there is a right of contribution among them. 704 ILCS 100/2(a) (2006). The contribution right exists only in favor of a defendant who has paid more than his pro rata share of the common liability. 704 ILCS 100/2(b) (2006); *see generally Dubina v. Mesirow Realty Dev., Inc.*, 197 Ill. 2d 185, 191, 756 N.E.2d 836, 839

(2001) (describing statutory scheme).

The right, however, is "subject to an important limitation" when a plaintiff settles his claim against a defendant subject to the Act. *Dubina*, 197 Ill. 2d at 190, 756 N.E.2d at 839. Under the Act, a defendant who settles the plaintiff's claim against him "in good faith," 704 ILCS 100/2(c) (2006), is not subject to the contribution claims of non-settling defendants, 704 ILCS 100/2(d) (2006), and the plaintiff's recovery from the non-settling defendants is reduced by the amount of the settlement, 704 ILCS 100/2(c) (2006). Also, and critically important here, the settling defendant cannot recover contribution from any defendant whose liability the settlement did not extinguish. 704 ILCS 100/2(e) (2006).[7]

### i. Application of the Contribution Act

The Contribution Act applies to C & R and Conrad because they were "subject to liability in tort" in the district court action, as section 2(a) of the Act requires. *See Giordano v. Morgan*, 197 Ill. App. 3d 543, 548, 554 N.E.2d 810, 813 (2nd Dist. 1990) (noting this prerequisite to the Act's application).[8]

Illinois courts construe the phrase "subject to liability in tort" to mean

---

[7] These provisions implement one of the "two important public policies" underlying the Act – "the encouragement of settlements." *Johnson v. United Airlines*, 203 Ill. 2d 121, 133, 784 N.E.2d 812, 821 (2003). The other policy, of course, is "the equitable apportionment of damages among tortfeasors." *Id.*

[8] C & R does not deny that Conrad and C & R were subject to liability "arising out of the same injury to person or property," as section 2(a) of the Act also requires. 740 ILCS 100/2(a) (2006); *see Alper v. Altheimer & Gray*, 257 F.3d 680, 685-88 (7th Cir. 2001) (discussing the "same injury" requirement); *Board of Trustees*, 208 Ill. 2d at 279-81, 803 N.E.2d at 471-73 (same).

"potential" liability, *see People v. Brockman*, 143 Ill. 2d 351, 371, 574 N.E.2d 626, 634 (1991); *Doyle v. Rhodes*, 101 Ill. 2d 1, 10, 461 N.E.2d 382, 387 (1984); *Giordano*, 197 Ill. App. 3d at 548, 554 N.E.2d at 814, and they construe "potential liability" broadly, *see Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 783 (7th Cir. 2008). Potential tort liability is determined "'at the time of the injury to the plaintiff,' not when the basis for liability is actually decided by the court." *Sompo Japan*, 522 F.3d at 783 (quoting *Joe & Dan Int'l Corp. v. U.S. Fid. & Guar. Co.*, 178 Ill. App. 3d 741, 750, 533 N.E.2d 912, 918 (1st Dist. 1988)). The particular theories of liability the plaintiff has chosen to pursue are therefore irrelevant. *Doyle*, 101 Ill. 2d at 14, 461 N.E.2d at 388 (holding that the Act focuses "on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss").

Under these standards, C & R and Ulz are both subject to the Act. In the district court action, New Freedom claimed to have suffered an injury from the actions of C & R and Conrad in connection with the mortgage loan New Freedom made to Heard. New Freedom alleged that C & R and Ulz had acted as brokers on the loan and prepared the documents Heard submitted when she applied to New Freedom for the loan. Those documents were allegedly false in all kinds of ways, containing misrepresentations about everything from Heard's intention to occupy the property as her principal residence to the property's value.

Although New Freedom named Conrad in its common law fraud claim in Count I, Consumer Fraud Act claim in Count II, and RICO claim in Count IX, he was also "subject to liability in tort" for negligent misrepresentation on these facts.

The elements of negligent misrepresentation and common law fraud are "quite similar." *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (1989). Negligent misrepresentation has "essentially the same elements" as fraud, except that the mental state is different because the defendant need not know his statement was false, and there is an added element, a duty to the plaintiff to communicate accurate information. *Id.*; *see also Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 335 (7th Cir. 1999).

Because Conrad was alleged to have known Heard's documents were false, Conrad was also potentially subject to liability for negligent misrepresentation, a claim for which his knowledge was unnecessary. As for the requisite duty, the district court in the underlying action held that a mortgage broker has a duty to convey accurate information to a lender and so can be liable for negligent misrepresentation. *See New Freedom*, 2004 WL 783206, at *11-12 (denying C & R's motion to dismiss); *see also Ivanhoe Fin., Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 546934, at *5 n.2 (N.D. Ill. Feb. 26, 2004); *cf. Dahm v. First Am. Title Ins. Co.*, No. 06 C 5031, 2008 WL 1701901, at *3-4 (N.D. Ill. April 9, 2008) (denying a motion to dismiss a negligent misrepresentation claim because a mortgage broker has a duty to convey accurate information to borrowers). If C & R was "subject to liability in tort" for negligent misrepresentation, so was Conrad. The Contribution Act applies to negligent misrepresentation claims. *Credit Gen. Ins. Co. v. Midwest Indem. Co.*, 916 F. Supp. 766, 772-73 (N.D. Ill. 1996).

C & R does not dispute that a negligent misrepresentation claim *could* have been brought against Conrad. C & R argues that Conrad was not "subject to

liability in tort" because New Freedom *did not* bring a negligent misrepresentation claim against him – although negligence was alleged against other defendants, including C & R itself. C & R notes that Conrad was accused of fraud, an intentional tort, and the Contribution Act does not apply to intentional torts.

C & R is right that New Freedom alleged fraud on Conrad's part, not negligence. C & R is also right that the Contribution Act does not apply to intentional torts such as fraud. *See Gerrill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 206, 538 N.E.2d 530, 542 (1989). The problem with C & R's argument is that, as discussed above, a defendant's "liability in tort" means his "potential" liability. *Doyle*, 101 Ill. 2d at 10, 461 N.E.2d at 387. "Although a party's complaint is relevant, Illinois courts consistently have held that the plaintiff's own theory of liability is not conclusive for the purposes of the Contribution Act." *Sompo Japan*, 522 F.3d at 784; *see, e.g., Giordano*, 197 Ill. App. 3d at 549, 554 N.E.2d at 814 (finding Contribution Act applied although complaint alleged contract claim).

What matters is instead the defendant's "culpability," judged as of the time of the injury. *Doyle*, 101 Ill. 2d at 14, 461 N.E.2d at 388. It makes no difference, then, that New Freedom chose to allege fraud by Conrad rather than negligent misrepresentation. *See, e.g., Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, No. 91 C 6103, 1994 WL 710771, at *14-15 (N.D. Ill. Dec. 16, 1994) (declining to rule out contribution in connection with a complaint alleging only intentional conduct because the evidence might ultimately establish liability based on negligence). As long as Conrad was potentially liable for negligent misrepresentation, he was

"subject to liability in tort," and the Act applies.[9]

C & R also argues that Conrad was not "subject to liability in tort" for purposes of the Contribution Act because the claims against him sought recovery for economic loss. Under what has come to be known as "the *Moorman* doctrine," C & R notes, a plaintiff cannot recover damages for economic loss in tort. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).

Again, the premises of C & R's argument are right – New Freedom sought recovery for economic loss, and under the *Moorman* doctrine there is generally no recovery for economic loss in tort – but the conclusion is wrong. *Moorman* specifically excepted negligent misrepresentation claims from the prohibition on recovery of economic loss in tort. *Moorman*, 91 Ill. 2d at 89, 435 N.E.2d at 452 (stating that "economic loss is recoverable . . . where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations"); *see Equity Builders & Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 890-92 (N.D. Ill. 2005) (explaining exception for negligent misrepresentation); *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App.

---

[9]    Even if the proper focus were strictly on the pleadings, it would not help C & R. In addition to common law fraud, New Freedom alleged a Consumer Fraud Act claim against Conrad in Count II of its amended and second amended complaints. Although that is a statutory claim, the Contribution Act applies to statutory claims if the statutory violation consists of tortious conduct. *Brockman*, 143 Ill. 2d at 572, 574 N.E.2d at 634. Because Consumer Fraud Act claims do not require intent, the Contribution Act can apply to them. *See Allendale*, 1994 WL 710771, at *14 (citing *Carl Sandburg Village Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 197 Ill. App. 3d 948, 953, 557 N.E.2d 246, 250 (1st Dist. 1990)).

3d 90, 94-97, 777 N.E.2d 603, 606-09 (1st Dist. 2002) (same).[10/] The *Moorman* doctrine accordingly did not prevent Conrad from being "subject to liability in tort."

Because Conrad was "subject to liability in tort" in connection with New Freedom's action in the district court, the Contribution Act applied to the claims against him, just as it applied to the claims against C & R.

### ii. Enforceability of the Assignment

The assignment on which C & R bases its claim is unenforceable under the Contribution Act. Two decisions of the Illinois Supreme Court make this abundantly clear.

The first, *Dubina v. Mesirow Realty Dev., Inc.*, 197 Ill. 2d 185, 756 N.E.2d 836 (2001), holds that a settlement in which a plaintiff assigns to a settling defendant his cause of action against a non-settling defendant is not made in "good faith" as the Act requires. *Id.* at 196, 756 N.E.2d at 843. For three reasons, the court found this kind of settlement "contrary to the terms of, and the policies underlying, the Act." *Id.* at 195, 756 N.E.2d at 842. First, it deprives the non-settling defendant of his statutory right of setoff under section 2(c) of the Act because he cannot reduce his own liability by the amount paid for the assignment. *Id.* Second, it defeats the

---

[10/]   Because the duty mentioned in *Moorman* to provide accurate information is an essential element of negligent misrepresentation, *see A, C & S, Inc.*, 131 Ill. 2d at 452, 546 N.E.2d at 591, the *Moorman* doctrine will never bar a negligent misrepresentation claim that can withstand a motion to dismiss under Rule 12(b)(6). Courts occasionally conclude that the *Moorman* doctrine bars a negligent misrepresentation claim because the defendant had no duty to provide accurate information, *see, e.g., Equity Builders*, 406 F. Supp. 2d at 890-92, but those courts could also have found simply that the complaint failed to state a claim.

Act's goal of equitably apportioning damages. *Id.* at 195-96, 756 N.E.2d at 842. And third, it allows the settling defendant "to accomplish indirectly that which [it] could not do directly": recover contribution from the non-settling defendant in violation of section 2(e) of the Act. *Id.* at 196, 756 N.E.2d at 843.

The second decision, *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 827 N.E.2d 435 (2005), takes *Dubina* one step further. *BHI* holds that when a plaintiff and defendant enter into a settlement of the kind *Dubina* found not made in good faith, the settling defendant not only forfeits the protections that the Contribution Act would give a good faith settlement. He also forfeits his right to pursue the assigned claims at all. *Id.* at 366, 827 N.E.2d at 441.[11/] The court again noted that "[a]n arrangement by which a settling defendant attempts to obtain indirect contribution from a non-settling defendant by an assignment of claims violates the Contribution Act." *Id.* This, the court said, is unacceptable: "We cannot allow the settling defendants to contract an end run around section 2(e)." *Id.* The assignment is therefore unenforceable. *Id.*

Under *BHI*, New Freedom's assignment to C & R of its judgment against Conrad is unenforceable. The assignment was an explicit term in C & R's

---

[11/] As Illinois tort lawyers know, *Dubina* and *BHI* are related. Both arose out of the same fire that destroyed a Chicago building housing several art galleries, and both involved the same settlement agreements and assignments. After the court in *Dubina* held the settlements had not been made in good faith, the settling defendants took the position that *Dubina* had simply rendered the assigned claims "less valuable" because the non-settling defendants could assert counterclaims for contribution. *BHI*, 214 Ill. 2d at 364, 827 N.E.2d at 440 (internal quotation omitted). But, the settling defendants contended, *Dubina* did not "eliminate the [their] right to assert those claims." *Id.* The court in *BHI* disagreed.

-17-

settlement: in exchange for C & R's payment, New Freedom agreed to obtain a default judgment against Conrad and assign the judgment to C & R, and New Freedom did just that. The New Freedom-C & R assignment attempts the same end run around section 2(e) of the Contribution Act that the Illinois Supreme Court found unacceptable in *BHI*. Just as the settling defendants in *BHI* could not pursue the assigned claims, C & R cannot pursue the assigned judgment.

C & R insists that *BHI* is distinguishable precisely because *BHI* involved the assignment of causes of action and this case involves the assignment of a judgment. But it is not evident why this makes a difference, and C & R fails to explain why. A money judgment is simply what results when a cause of action for damages is successful. *See Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 256, 856 N.E.2d 389, 411 (2006) ("A judgment is the final determination of a court upon matters submitted to it on a matter or proceeding."). The judgment is the cause of action brought to fruition. If a settlement involving the assignment of a cause of action is unenforceable under the Act, a settlement involving the assignment of a judgment is unenforceable as well.

C & R also suggests that Conrad may not rely on the Contribution Act in this case because he failed to seek contribution in the underlying action. It is true that section 5 of the Act, 740 ILCS 100/5 (2006), would prevent Conrad from seeking contribution from C & R now because he failed to do so in the underlying action. *See Harshman v. DePhillips*, 218 Ill. 2d 482, 493-94, 844 N.E.2d 941, 948-49 (2006). But Conrad is not seeking contribution from C & R. He is objecting to C & R's attempt to circumvent the rule that C & R cannot seek contribution against *him*.

That Conrad has given up his own right to seek contribution does not somehow entitle C & R to enforce a contract plainly unenforceable under Illinois law.

Because New Freedom's assignment to C & R of its judgment against Conrad is unenforceable, C & R's claim based on the assigned judgment is unenforceable. The objection to the claim must be sustained. *See* 11 U.S.C. § 502(b)(1).

### 4. Conclusion

The objection of Conrad Ulz, Mary Ann Ulz, and Rebecca Ulz to the claim of C & R Mortgage Co. is sustained. The claim of C & R Mortgage Co. is disallowed. A separate order will be entered in accordance with this opinion.

Dated: January 30, 2009

_____
A. Benjamin Goldgar
United States Bankruptcy Judge